UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **MICHAEL LEE AND SUSAN BROADWAY LEE** | **CIVIL ACTION NO. 3:23-CV-00219** |
| **v.** | **JUDGE JOHN W. deGRAVELLES** |
| **HOOD CONTAINER OF LOUISIANA, LLC** | **MAGISTRATE JUDGE RICHARD L. BOURGEOIS, JR.** |

**FIRST AMENDED COMPLAINT**

NOW INTO COURT, through undersigned counsel, comes Plaintiffs, Michael Lee and Susan Broadway Lee, who respectfully represent the facts and causes of action pled herein against Defendant as follows:

1.

**INTRODUCTION, JURISDICTION AND VENUE ALLEGATIONS**

This court has subject-matter jurisdiction herein pursuant to 28 U.S.C. § 1332 as Plaintiffs and Defendant are citizens of different states. This is an action pursuant to Louisiana's Whistleblower Statute, La. R.S. 23:967, for reinstatement of employment and to recover damages on behalf of Plaintiff against the Defendant for wrongful termination and retaliation. Venue is appropriate in the United States District Court for the Middle District of Louisiana, pursuant to 28 U.S.C. § 1391(a) because the events giving rise to this action occurred in this judicial district.

2.

**PARTIES**

Plaintiffs, Michael Lee ("Mr. Lee") and Susan Broadway Lee ("Mrs. Lee"), of full age of majority, are domiciled in the Parish of West Feliciana, State of Louisiana. Mr. and Mrs. Lee are

husband and wife.

3.

At all relevant times, Plaintiff, Michael Lee, was an employee or former employee of the Hood Container of Louisiana, LLC ("Hood Container").

4.

Made Defendant herein is Hood Container of Louisiana, LLC, a limited liability company formed under Louisiana law registered in the Parish of East Baton Rouge, State of Louisiana.

5.

**JURISDICTION AND VENUE**

Jurisdiction is proper in this court because this court has subject matter jurisdiction over the dispute based on the object of the demand and the amount in controversy.

6.

Venue is proper in this court pursuant to La. R.S. 23:967(B) which provides that an employee may commence a civil action where the violation occurred against any employer who engages in reprisal.

7.

**BACKGROUND AND FACTS**

Hood Container owns and operates a papermill in St. Francisville, Louisiana. Mr. Lee was employed at this facility from approximately June 14, 2010 until May 2, 2022. During his twelve years of employment with Hood Container, Mr. Lee was a diligent and faithful worker and never had any disciplinary actions against him.

8.

On April 24, 2022, Mr. Lee and co-worker Braydon Knight ("Mr. Knight) were ordered

by their foreman, Kyle Haygood ("Mr. Haygood"), to perform the task of cleaning out one of the papermill's chemical tanks. This procedure is done each year and involves draining the tank and washing out the "mud" that has accumulated at the bottom of the tank. The term "mud" refers to the mixture of lime and caustic substances that build up inside the tank throughout the year. The buildup is typically several feet thick, being loose and runny on top and solidified on bottom. The top layer can be washed away using a pressurized stream of water, while the bottom layer often needs to be cut through with a pickaxe.

9.

Mr. Lee was paired with Mr. Knight for this job because Mr. Knight was a brand-new employee and Mr. Lee was a seasoned operator who had performed this task every year during his twelve years of employment with Hood Container.

10.

When Mr. Lee and Mr. Knight arrived at the tank that they were ordered to clean, Mr. Lee discovered that an outside crew contracted from American Environmental & Industrial Services, LLC ("American Environmental") was preparing to hydroblast the area above the tank known as the "mud drum." American Environmental's employees had taped off the area around the tank with red tape, which included the tank's entrance, indicating that no one was to enter that work area for safety reasons. The hydroblasting crew does not use yellow tape, and only uses red tape, because it is never safe for employees to work in the area where they are hydroblasting. Mr. Lee immediately recognized the danger and reported it to Mr. Haygood. Nevertheless, Mr. Haygood went and got a pressure washer and ordered them to clean the tank with a pressure washer.

11.

The hydroblaster the workers were utilizing emits water at a pressure of up to 40,000 psi and can cause severe injury to anyone who is hit by its spray. Mr. Lee was aware of the danger the hydroblaster presented, as one of the contractor's employees was accidentally hit by the hydroblaster's spray about three years prior within Hood Container's facility. This resulted in a severe injury to the employee which required surgery to repair. The hydroblaster requires a water source in order to operate. The hydroblaster crew connected it to the firehose that Mr. Lee needed to clean out the tank.

12.

Mr. Lee returned to his supervisor, Mr. Haygood, and reported to Mr. Haygood the danger that was presented by this work assignment, specifically noting that the area had been taped off with red tape, and that the hydroblaster crew was using the water source that Mr. Lee needed to complete the job. Mr. Lee then suggested to Mr. Haygood that the work assignment should be deferred and should commence after the hydroblaster crew had finished their work in the area around the tank.

13.

Nevertheless, Mr. Haygood ordered Mr. Lee to ignore the hydroblaster crew, bypass the red hazard tape, and enter the tank with a pressure washer. Mr. Lee was required to use a pressure washer to clean the tank because the hydro-blasting crew was utilizing the firehose. Had he and Mr. Knight not been working simultaneously with the hydroblasting crew, Mr. Lee would have had access to the firehose and use of the pressure washer would have been unnecessary.

14.

Mr. Lee reluctantly agreed to comply with Mr. Haygood's orders. Mr. Lee crossed the

red caution tape, climbed into the tank, and attempted to perform his work assignment. Mr. Lee then dragged the pressure washer, his lifeline, and the tools necessary to complete his work assignment into the tank. Mr. Lee had to pull these items through a manhole and through two feet of mud. In doing so, Mr. Lee reaggravated a shoulder injury he had suffered a few months before at Hood Container's facility. Mr. Lee's shoulder injury was diagnosed as a shoulder strain. After seeing the company doctor for the initial shoulder injury, Mr. Lee was given the instruction to return to work but not to aggravate the affected extremity.

15.

The hydroblaster crew continued to spray the mud drum above Mr. Lee while Mr. Lee attempted to clean out the tank. The hydroblaster crew were blasting filth and debris down a drainpipe which was situated near where Mr. Lee and Mr. Knight were working. The drainpipe then became clogged with this material, forcing the hydroblaster crew to cease working until maintenance arrived. Maintenance remedied the clogged drainpipe by cutting the pipe immediately above the area of blockage. This cut left the exposed end of the drainpipe pointing directly at the area in which Mr. Lee and Mr. Knight were working, at about their chest/head level.

16.

The hydroblaster crew resumed work, pushing nuts, bolts, metal debris, waste, and other projectiles down the drainpipe. These projectiles were being shot at Mr. Lee at a very high and unsafe velocity. Mr. Lee then ceased working and reported the increasingly more dangerous conditions to his supervisor, Mr. Haygood.

17.

Mr. Lee told Mr. Haygood that the job could not be safely performed under these

conditions. Mr. Haywood agreed with Mr. Lee's analysis of the situation. Mr. Lee informed Mr. Haywood that he had reaggravated his shoulder injury and asked if he could take leave for the rest of the day. Mr. Haygood expressed no objections to Mr. Lee leaving.

18.

After he arrived at home, Mr. Lee's shoulder pain grew more intense throughout the day. Mr. Lee promptly called his employer and requested two days off to heal, informing Hood Container that he would return to work on April 29, 2022. Mr. Lee then reported to work on April 29, 2022, as he agreed he would.

19.

On April 29, 2022, Supervisor Ryan Al-Marhoun ("Mr. Al-Marhoun") met with Mr. Lee and asked Mr. Lee about the events that transpired on April 24, 2022. Specifically, Mr. Al-Marhoun asked Mr. Lee why the cleaning of the tank had not been completed. Mr. Lee informed Mr. Al-Marhoun about the unsafe conditions that were present and that the job could not be safely performed until the dangers were removed.

20.

Mr. Al-Marhoun told Mr. Lee that, as a seasoned employee, Mr. Lee's objections to work assignments would set a bad example to the rest of the labor force at the papermill. Mr. Lee stressed that he was not objecting to the work assignment but instead was seeking a safer environment before continuing with the assigned task. Mr. Lee was released from his meeting with Mr. Al-Marhoun and sent back to work. Mr. Lee worked the next three days without event.

21.

On May 2, 2022, Mr. Lee received a phone call from human resources informing him that he was being terminated for job abandonment and insubordination. When Mr. Lee asked how he

had been insubordinate, the human resources representative stated that she did not know. Mr. Lee asked the human resources representative if he could be allowed to tell his side of the story. The human resources representative agreed to listen. When Mr. Lee finished explaining, the human resources representative stated that this was the third version of events that she had heard.

22.

Mr. Lee received a Notice of Separation on May 2, 2022. The Notice stated his cause of separation as terminated for job abandonment.

23.

**VIOLATION OF LOUISIANA WHISTLEBLOWER STATUTE**

The Plaintiff incorporates each and every allegation set forth in the preceding paragraphs, as if specifically set forth herein.

24.

The conditions created by the hydroblaster crew in Mr. Lee's work area on April 24, 2022 put Mr. Lee in reasonable apprehension of death or serious injury and violated Hood Container's legal duty to provide Mr. Lee with a reasonably safe place to work. La. R.S. 23:13. The Defendant also violated the battery statutes, La. R.S. 14:34 and 14:35, or alternatively, the assault statutes, La. R.S. 14:36 and La. R.S. 14:37, by effectively causing ruts, bolts, metal debris and other projectiles to be shot at Mr. Lee at a very high and unsafe velocity. Mr. Lee, in good faith, reported the facts which comprised these violations of law to his supervisors, objected to these violations of law, and refused to participate in these unlawful acts or practices. His supervisors declined to cease these dangerous activities and terminated Mr. Lee's employment in reprisal.

25.

Hood Container took reprisal action against Mr. Lee, who in good faith, advised his supervisors of the unsafe working conditions in their facility, by terminating Mr. Lee's employment.

26.

Hood Container's retaliatory actions violated Mr. Lee's rights under La. R.S. 23:967 and demonstrate their reckless indifference to the protected rights of Mr. Lee.

27.

Because of Hood Container's retaliatory actions against Mr. Lee as described above, Mr. Lee is entitled to recover damages, reasonable attorney fees, and court costs, in accordance with La. R.S. 23:967.

28.

**LOSS OF CONSORTIUM AND MENTAL ANGUISH**

The Plaintiffs incorporates each and every allegation set forth in the preceding paragraphs, as is specifically set forth herein:

29.

As a result of the wrongful conduct of Hood Container, both Mr. Lee and Mrs. Lee suffered loss of consortium, loss of society, affection, and assistance, all to the detriment of their marital relationship. Mrs. Lee discovered that she was pregnant shortly before Mr. Lee's termination. The loss of Mr. Lee's income created significant pressure on their family, putting the financial burden of the family solely on Mrs. Lee's shoulders. Mrs. Lee subsequently suffered a miscarriage in late May of 2022.

30.

All of the aforesaid injuries and damages were caused solely and proximately by the intentional acts of the Defendants.

31.

**DECLARATORY RELIEF REQUESTED**

The Plaintiff's desires and it is appropriate for this Court to enter the following judgment against the Defendant, including:

32.

Determining and declaring that the conduct of the Hood Container was and is in violation of the Mr. Lee's rights under La. R.S. 23:967.

33.

Determing and declaring that the conduct of the Defendant caused a loss of consortium to the Plaintiffs.

34.

Awarding the Plaintiff back pay, front pay and such benefits as the Plaintiff would have enjoyed had his employment never been terminated on May 2, 2022, with prejudgment interest and full compensation for such benefits which the Plaintiff lost.

35.

**JURY DEMAND**

The Plaintiff hereby requests a trial by jury.

36.

**PRAYER FOR RELIEF**

WHEREFORE, based on the foregoing, the Plaintiffs, Michael Lee and Susan Broadway

Lee, further respectfully pray for and request judgment against the Defendant, Hood Container of Louisiana, LLC, for actual damages, in such as will adequately compensate the Plaintiffs for the loss of enjoyment of life, mental and emotional anguish, humiliation, pain and suffering, loss of consortium, compensatory damages and such other damages as resulted from the unlawful conduct of the Defendant, together with reasonable attorneys' fees and expenses, costs, interest as allowed by law, reinstatement or in the alternative front pay, and for such other and further legal and equitable relief as the Court deems proper.

Respectfully submitted:

**SMITH LAW FIRM**

  /s/ J. Arthur Smith, III
**J. Arthur Smith, III T.A.** (# 07730)
830 North Street
Baton Rouge, Louisiana 70802
Telephone: (225) 383-7716
Fax: (225) 383-7773
Email: jasmith@jarthursmith.com

*Attorney for Plaintiffs, Michael Lee and Susan Broadway Lee*